Staunton.

## W. D. Bunn & Company v. Dickenson County.

September 11, 1916.

1. CONTRACTS—*Roads—Change of Location—Compensation.*—Under a road construction contract allowing a county to make any minor changes it desires in the location of the road, but providing that the contractor shall be paid at unit prices mentioned in the contract for any excess in total quantities that the changed location may·have over the location shown on the plans, the contractor is entitled to recover for any such excess in total quantities resulting from any change in the line, however slight.  There is no difference in meaning between a "minor change" of location and a "shift of location."

2. CONTRACTS—*Roads—Dirt for Fills—Deficiency—Who to Pay For—Shifting Location—Case at Bar.*—Under the contract in litigation, the embankments and fills on a roadway, if the original location had been followed, would have exceeded the dirt taken from the pits, but the defendant had the right to make minor changes in the line upon paying for any excess in total quantities that the changed location had over the location shown on the plans.  The defendant made minor changes or shifts in the location for the purpose of supplying the deficiency which would otherwise have to have been supplied from borrow pits.  The question of controversy was whether the contractors were bound, under their contract, to find the additional dirt necessary for this purpose at their own expense.

   *Held:* Under the terms of their contract, and the custom shown by the evidence to prevail in such cases, the contractors were not·bound to find the additional dirt at their expense, and, having provided it, the expense thereof should be paid by the defendant.

3. CONTRACTS—*Case at Bar—Extra Work.*—The work sued for in the case at bar was provided for in the contract between the parties and to be paid for thereunder, and was not "extra work."

Error to a judgment of the Circuit Court of Dickenson county on an appeal from the board of supervisors of said county.  Judgment for the defendant. Plaintiff assigns error.

*Reversed.*

The opinion states the case.

*Bullitt & Chalkley* and *S. H. &. G. C. Sutherland*, for the plaintiffs in error.

*Chase & Daugherty* and *Skeen · & Skeen*, for the defendant in error.

Kelly, J., delivered the opinion of the court.

W. D. Bunn & Company entered into a written contract, dated May 15, 1913, with the board of supervisors of Dickenson county to build a county road. After the completion of the road the company presented to the board an account for a balance alleged to be due and unpaid for work done under the contract. This account was disallowed by the board, and the company appealed to the circuit court. The case was heard without the intervention of a jury and resulted in a final judgment for the board, which we are now asked to review. We will hereinafter refer to Bunn & Company as the plaintiffs, and to the board of supervisors as the defendant.

The decision turns largely upon the construction of two provisions of the contract. The first of these appears in the form of a proposal or bid by the plaintiffs, incorporated into and made a part of the contract by appropriate reference, in the words and figures following:

"We will complete the road according to plans and specifications and profiles for lump sum of $39,900.00, or we will build the road as per the above classified bid so as not to exceed $41,000.00."

In explanation of the reference to the classified bid in the foregoing proposition, it is well to state that

the defendant had previously advertised for bids, had furnished forms upon which the bids were to be made, and had received a number of bids, all of which were made for unit prices—that is, the yardage, pipes, concrete, tile, etc., were seperated and the prices to be paid therefor itemized in the bids as so much per cubic yard of earth excavation, so much per lineal foot of pipe, etc. These bids had all been rejected and, on the same day, the plaintiffs submitted the above proposal, which was promptly accepted by the board of supervisors, forwarded to the State Highway Commissioner and approved by him.

The other provision which, along with the one first above quoted, requires interpretation, was written into the contract by the State Highway Commissioner, as follows:

"To construct complete according to plans and specifications on file at the clerk's office in Clintwood, Va., a road from Clintwood to the ford of McClure river in Dickenson county. The party of the second part reserving the right to make such minor changes in the location of said road as may to them or their engineer seem best, provided the party of the first part shall be paid at the unit prices set out in the proposal hereto attached for any excess in total quantities that the changed location may have over the location shown on the plans."

Soon after the work was started, defendant's engineer began to make what he called "shifts," but what the plaintiffs then and ever since insisted were "minor changes," in the location of the road, by virtue of which the line of the road was thrown further into the hillsides, thus requiring the plaintiffs to excavate much more material than would have been required under the location upon which the contract was based.

These shifts or changes, according to figures made by
the engineers of the defendant (which are less than the
figures as claimed by the plaintiffs, but which, under
the terms of the contract, we think, are conclusive as
to the quantity of excavation), required the plaintiffs
to excavate from the cuts 20,718.1 cubic yards more
than they would have had to excavate if the center
of the line of the road, as originally located, had been
adhered to. The claim for compensation for this yard-
age constitutes the principal item in controversy.

It is clear that if this additional excavation was an
"excess in total quantities," within the meaning of
the contract, and was rendered necessary by "minor
changes," the demand of the plaintiffs must be sus-
tained; and upon these questions of construction. it
seems to us that the case is plainly with the plaintiffs.
We are unable to appreciate the distinction between a
minor change of location and a shift of location. The
contract uses only the one term, "minor change,"
and we are given no expert definitions showing any
difference between that and a shift of the line. The
effort of the defendant's engineer to explain the differ-
ence fell short of the mark, and amounted to a demon-
stration that in this case these two expressions are to
be regarded as synonymous in effect and in meaning.
We must, upon familiar principles of interpretation,
give some significance to this section of the contract;
and it cannot be reasonably construed to mean any-
thing but that, if any changes in the line, however
slight, were made, and resulted in an increase of the
total quantities over those shown on the plans, the
plaintiffs should be paid therefor.

But it is contended that this increase in excavation
was not "any excess in total quantities," because the
embankments or fills were thereby decreased. The

embankments or fills, if the original location had been followed, would have exceeded the amount of dirt taken from the cuts; the shifts or minor changes were made for the purpose of supplying the deficiency; and the controversy is, therefore, narrowed down to the question whether the plaintiffs were bound, under their contract, to find the additional dirt necessary for this purpose at their own expense. The defendant relies upon the fact that the proposal of the plaintiffs was *to complete the road;* the argument being that this language means to complete not only the excavation but the embankments, regardless of whether the excavation shown on the original plans and specifications would have been sufficient for this purpose or not. A sufficient answer to this contention is that, while the plaintiffs did make a lump bid, that bid was in terms confined to the completion of the road according to plans, specifications and profiles which were distinctly made a part of the contract, and which warranted the plaintiffs in assuming that it would be proper and safe for them to follow the custom shown by the evidence to prevail in such cases, to bid merely upon the excavation from cuts as shown upon the original line, and to assume that if the cuts and fills did not balance each other the plaintiffs would be directed by the engineer of the defendant to get the additional dirt necessary either from the sides of the cuts already indicated or from borrow pits, and that in either event they would be paid therefor.

In the specifications are found the following provisions, the italics being added:

"*Excavations* shall include the removal and placing in embankments (as hereinafter described) of all materials taken from side cuts, side drains, drainage

ditches, channel changes, *or borrow pits*, as may be directed by the engineer . . .

"All material shall be measured and paid for *in excavation only* . . .

"In cases where the excavation inside the regular slopes and widths are insufficient to construct the adjacent embankments, as may be directed by the engineer, *the deficiency shall be supplied by regularly widening the excavation or from borrow pits.*"

There was also in the specifications an approximate estimate which placed the amount of *excavation* at 99,139 cubic yards. After the first set of bids had been rejected and before the plaintiffs' second bid was made, there was a general discussion between the contractors and the representatives of the county, which showed that both parties believed this approximate estimate to be excessive. It is conclusively shown that at that time neither party believed that the excavation referred to in this estimate would reach 80,000 cubic yards. It is also conclusively shown, that the representatives of the county then knew that the fills would require a vastly larger amount of dirt than was shown even in this excessive estimate for the excavation. The unit bid for this sort of work was 50c per cubic yard, which is shown to have been a reasonable if not a low price. It is wholly unreasonable to conclude that the agents of the defendants could have failed to understand that plaintiffs were bidding on *excavations as shown on the plans*, without regard to the fills.

It is quite true that the plaintiffs, having offered to do the excavation necessary as shown by the plans for a gross sum, would have been bound to complete that work, even if the amount had exceeded within reasonable limits the approximate estimate; but the point

is that the excess here was not in the excavation referred to in the plans and specifications and plainly contemplated by the parties, but was in additional excavation necessary for the fills.

There is no question about the fact that the engineer made the so-called shifts for the purpose of getting the extra dirt to make the fills; and it appears in the evidence without contradiction that the defendant's engineer, during the course of the work, declined to furnish borrow pits for the extra dirt needed in the fills, assigning as his reason that if he got the dirt in this way instead of by shifting the line he would have to allow the plaintiffs compensation therefor. This admission, which is a manifest conclusion without the admission, shows the construction which the defendant itself placed upon the contract, and ends the contention that the mere fact of the lump sum bid defeats the claim of the contractor. If the lump sum bid cannot be construed to deprive the plaintiffs of the right to compensation for dirt taken from borrow pits and placed in the embankments, it follows that such bid did not in itself mean that the road was to be completed for the amount named in the proposal regardless of the quantity of earth that went into the fills.

Having reached the conclusion that the bid in this case was based on excavation as shown on the plans, without regard to the fills, the question whether the approximate estimate furnished by the defendant's engineer was so grossly wrong as to amount to a fraud on the plaintiffs does not require discussion.

There was a stipulation in the contract that plaintiffs were not to be paid for any "extra work" unless the same should be done in pursuance of a written order from the defendant, and this stipulation is invoked in defense of the claim here sued on. The stipulation

is not applicable. The work was provided for in, and was to be paid for under the terms of the contract, and was not of the character contemplated by the clause relating to "extra work."

We are unable to say from the evidence that the trial court was not right in rejecting all the other items in the account except the one we have discussed, and as to that one, as already indicated, we are of opinion that the terms of the contract require us to accept as final, so far as quantities are concerned, the figures of the engineers of the defendant. These figures show that the plaintiffs are entitled to recover the sum of $10,559.05 for additional excavation (20,718.1 cubic yards at 50c per yard).

The judgment complained of will be reversed, and this court will enter judgment for the plaintiffs for the amount above named, with interest thereon from the first day of September, 1914.

*Reversed.*